UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>RONALD HARRISON, )<br>)<br>Defendant. )<br>) | Criminal No. 12-cr-0088-01 (ESH) |

## MEMORANDUM OPINION

Before the Court is defendant Ronald Harrison's Emergency Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i).  (*See* Def.'s Mot., ECF No. 32.)  Defendant seeks release because he has a medical condition that puts him at increased risk of serious complications or death should he contract COVID-19.  For the reasons stated herein, the motion will be granted.

## BACKGROUND

In 2012, pursuant to a Rule 11(c)(1)C) plea agreement, defendant pleaded guilty to one count of unlawful distribution of 5 kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and was sentenced to 180 months imprisonment and 5 years of supervised release.  (Judgment, ECF No. 20.)  His current projected release date is January 8, 2025.

On July 21, 2020, defendant submitted a request for compassionate release or home confinement to the warden of FCI Gilmer.  (Def.'s Mot. Ex. C.)

On August 22, 2020, defendant filed his motion for compassionate. The government filed an opposition on September 3, 2020 (ECF No. 35), and defendant filed a reply on September 8, 2020 (ECF No. 37).

## ANALYSIS

Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). As amended by the First Step Act of 2018, § 3582(c)(1) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that . . .
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. 3582(c)(1).[1] Thus, to grant a motion for compassionate release filed by a defendant, a court must find that: (1) the defendant has either exhausted his administrative remedies within the BOP or waited thirty days after submitting a request to the BOP that it file a motion on his behalf, or that these requirements are excused; (2) there are "extraordinary and compelling reasons" to reduce the defendant's sentence; and (3) a sentence reduction is warranted after "considering the factors set forth in section 3553(a)." See 18 U.S.C. § 3582(c)(1)(A).

---

[1] Prior to the First Step Act, motions for compassionate release could only be brought by the Director of the Bureau of Prisons ("BOP"). See Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) ("Increasing the Use and Transparency of Compassionate Release").

2

The government does not dispute, and the Court agrees, that Mr. Harrison has satisfied the first two requirements for compassionate release. First, more than 30 days have passed since July 21, 2020, when defendant made a request to the warden of FCI Gilmer that a motion for compassionate release be made on his behalf. Second, as conceded by the government, Mr. Harrison has a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," *see* USSG 1B1.13, cmt. n.1(A), because he has a medical condition that puts him at an increased risk of serious complication or death should he contract COVID-19.

The only remaining question is whether, after considering the § 3553(a) factors, the Court concludes that a sentence reduction is warranted. Section 3553(a) provides that in determining an appropriate sentence, a court must take into account "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as, *inter alia*, afford adequate deterrence, provide just punishment, and protect the public. *See id.* § 3553(a)(1)-(2). Moreover, a sentence must be "sufficient, but not greater than necessary," to promote these goals. *See id.* § 3553(a). Having considered the § 3553(a) factors, the Court concludes that a sentence reduction is warranted.

First, the Court does not agree with the government that defendant "would pose a danger to public safety if released." (Opp. at 12.) To support this contention, the government points to the nature of defendant's conviction – a drug crime; the fact that two firearms were seized during a search of defendant's home; and his criminal history. The Court, however, does not view the

3

record in the same light.[2]  A person can be convicted of the unlawful possession and attempted distribution of cocaine without engaging in any violent conduct, and that was in fact the case with Mr. Harrison, who was convicted based upon his receipt of a package of cocaine in the mail.  As for the two firearms, they were discovered during a subsequent search of the house where Mr. Harrison resided, but they were not used to commit the crime of which he was convicted.  Finally, while Mr. Harrison has an extensive criminal history, all his prior convictions were drug-related, none included any violence, and most occurred over 25 years ago.

Defendant has been incarcerated since 2012.  During that time, he has completed a BOP drug treatment program, completed over 300 hours of educational programming, and earned his GED.  His last disciplinary infraction was in 2015, and it was minor.  In addition, due to the COVID-19 pandemic, his conditions of confinement have become notably more restrictive, akin to or worse than solitary confinement.  Finally, Mr. Harrison has a release plan that has been reviewed and approved by the United States Probation Office.  In short, nothing from the sentencing record or this Court's reevaluation of the section 3553(a) factors persuades this Court that Mr. Harrison needs to continue to be incarcerated in order to protect the public or to promote any other sentencing goal.

In addition, notwithstanding BOP's efforts to control the spread of COVID-19 within its institutions, it "cannot seriously be disputed" that an individual is better able to control his risk of contracting COVID-19 outside of prison and that reducing the overall prison population is an

---

[2] As Judge Contreras recently pointed out, if the Court were to agree that these facts, without more, were sufficient to demonstrate that a defendant would pose a "danger to public safety," "very few, if any, defendants who have served lengthy sentences would be able to take advantage of the First Step Act . . . a result [that] appears contrary to the purpose of the First Step Act amendments." *See United States v. Brown*, No. 92-cr-0345, slip op. at 12 (D.D.C. July 2, 2020), ECF No. 93.

4

important mitigation strategy for those who remain incarcerated.  *See United States v. Powell*, No. 05-cr-0061, 2020 WL 4578682, at *4 (D.D.C. June 18, 2020); *United States v. Glover*, No. 07-cr-0152-4, 2020 WL 4923635, at *3 (D.D.C. Aug. 21, 2020).  Even at institutions where there are relatively few reported cases to date,[3] that may be only due to the lack of widespread comprehensive testing, which means that there is the potential for an undetected breakout.  *See, e.g.*, *United States v. Brown*, No. 92-cr-0345, slip op. at 10 (D.D.C. July 2, 2020), ECF No. 93 ("wait and see strategy could prove too late to take preventative action"); *United States v. Dunlap*, No. 17-cr-207, 2020 WL 5231359, at *3 (D.D.C. Sept. 2, 2020) ("low number of reported cases might well be attributable to the fact that [BOP] has not implemented widespread testing for the virus" and thus "changes nothing about the inherent risks posed by carceral settings to vulnerable inmates"); *United States v. Croft*, No. 95-cr-496-1, 2020 WL 3871313, at *2 (E.D. Pa. July 9, 2020) (in the absence of a comprehensive testing protocol, "we cannot be certain of the true spread of infection at the prison").  At FCI Gilmer, for example, where Mr. Harrison is being detained, only 128 out of 1287 inmates have been tested.  *See* https://www.bop.gov/coronavirus/ (viewed on Sept. 22, 2020).

Accordingly, the Court finds that extraordinary and compelling reasons warrant a sentence reduction in this case.

## CONCLUSION

For the reasons stated above, the Court will grant defendant's motion for compassionate release and reduce his previously imposed sentence of 180 months imprisonment to time served.  In addition, the Court will modify the conditions of supervised release to include a three-month

---

[3] As of September 22, 2020, FCI Gilmer is reporting 8 current cases among inmates, 5 inmate recoveries, and 2 staff recoveries.  *See* https://www.bop.gov/coronavirus/ (viewed on Sept. 22, 2020).

5

period of home detention, with location monitoring at the discretion of the Probation Office.  A separate Order accompanies this Memorandum Opinion.

/s/ Ellen S. Huvelle
ELLEN S. HUVELLE
United States District Judge

Date:  September 23, 2020